## Case No. 14,943.

### UNITED STATES v. DELVALLE.

[Nowhere reported; opinion not now accessible.]

## Case No. 14,944.

### UNITED STATES v. DEMARCHI.

[5 Blatchf. 84.] 1

Circuit Court, S. D. New York. Oct. 18, 1862.

FEDERAL CRIMINAL JURISDICTION — MURDER ON THE HIGH SEAS—INDICTMENT—NATIONAL CHARACTER OF VESSEL—OWNERSHIP.

1. Where an offence is within a general jurisdiction of a court of the United States, it is not necessary that an indictment for the offence should exclude, by descriptive terms, every possible exemption of the defendant from the jurisdiction.

2. Thus, where a murder committed on a vessel is of such a character that a court of the United States can entertain jurisdiction of it, although the vessel has no national character, no national character need be alleged in the indictment, and it need not negative the possible foreign nationality of the vessel.

3. Under the eighth section of the act of April 30, 1790 (1 Stat. 113), it is sufficient, in an indictment for a murder committed on board of a vessel on the high seas, by an alien, to allege that the vessel was owned by a citizen of the United States, without alleging otherwise the national character of the vessel.

This was an indictment against [Ferdinando Demarchi] an alien, for a murder on the high seas, committed on board of the ship Blondel. The defendant, having been convicted, now moved for an arrest of judgment, on the ground that the indictment did not allege that the Blondel was an American vessel.

E. Delafield Smith, U. S. Dist. Atty.
Edwin James, for defendant.

SHIPMAN, District Judge. This indictment is founded on the eighth section of the act of April 30, 1790 (1 Stat. 113). It alleges that the murder was committed on board of the Blondel, "owned by a certain person or

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

persons to the said jurors unknown, being a citizen or citizens of the United States of America." It is insisted that this allegation is, on its face, insufficient to give the court jurisdiction, and that, therefore, the judgment ought to be arrested. The argument is, that, the jurisdiction of the courts of the United States not being unlimited over crimes committed upon all vessels on the high seas, it must be confined to American vessels, that is, vessels whose nationality is fixed and determined by registration in conformity with the navigation laws of the country, and that this national character of the vessel must be alleged in the indictment, unless the defendant is described as a citizen of the United States. This objection is purely technical, as the Blondel was proved, on the trial, to be, in fact, an American vessel, although her register was not produced. She was proved to have been built in the United States, and to have been exclusively owned by citizens of the United States, at the time of the commission of the offence.

The power of the government of the United States to punish offences on the high seas, is co-extensive with that of any other nation. Like all other maritime nations, it punishes robbery and murder on the high seas, whenever and wherever committed by its own subjects on the ocean, and whenever and by whomsoever committed on board of vessels belonging to its own subjects. Indeed, like other nations, it goes further than this, and punishes piracy and piratical murder on board of all vessels found on the high seas, which have no national character, and whose ownership cannot be determined. It was expressly decided, in U. S. v. Klintock, 5 Wheat. [18 U. S.] 144, that the act on which this indictment is founded extends to all persons, on board of all vessels which throw off their national character, by cruising piratically and committing piracy on other vessels. This indictment charges a piratical murder, and, if the court has jurisdiction to try such a case, where the offence was committed on board of a vessel having no national character, it is clear that no national character need be alleged in the indictment. It is quite true, that the proof in any given case may disclose the fact that the offence was committed on board of a foreign ship, sailing under a foreign flag, by a foreigner, and upon a foreigner, and that the crime was, therefore, one merely against another government. On such a disclosure, it would be the duty of the court to dismiss the case. But it is not necessary for an indictment, when the offence comes within a general jurisdiction of the court, to exclude, by descriptive terms, every possible exemption of the defendant from that jurisdiction. If the offence is of such a character that the court can entertain the case, although the vessel has no national character, no national character, as

has already been remarked, need be alleged; and it would seem equally clear, that the possible foreign nationality of the vessel need not be negatived in the indictment. This seems to have been the understanding of the courts and the profession in England, and to this understanding the practice in that country, in similar trials, has conformed, for a long series of years. That practice has been adopted here, and been steadily adhered to since the foundation of this government.

In indictments for piracy, both at common law and under the statutes, in England, there is usually no allegation either of the nationality of the vessel or of the citizenship of the defendant. The ownership of the vessel is sometimes, although not always, alleged to be in the subjects of the queen. Archb. Cr. Pl. & Ev. (14th London Ed.) pp. 363–365; 3 Chit. Cr. Law. (4th Am. Ed.) p. 1093. Indeed, in cases where the offence charged is not piratical, and is not alleged to have been committed piratically, the nationality of the vessel and of the defendant, and even the ownership, are often omitted. This was so in the case of Rex v. Thompson [2 East, P. C. 514, 517] in which the indictment is said to have been drawn by an eminent crown lawyer, and where the offence is not charged as having been piratically committed, but as an assault upon the captain of the vessel, by some of his own crew, with intent to murder him. The same is true of indictments for burning ships or sinking them at sea. 3 Chit. Cr. Law, pp. 1097, 1098.

But, independently of the foregoing considerations, I am satisfied that the allegation in this indictment, that this ship was owned by citizens of the United States, is sufficient to bring the case within the jurisdiction of the court. Even admitting, for this purpose, that the course of proceedings, both in our own and the English courts, has often departed from the sound rules of criminal pleading, still, I am not aware that citizens of the United States are permitted to sail, under any foreign flag, ships exclusively owned by them. Under the doctrine laid down by the supreme court of the United States, in the case of U. S. v. Palmer, 3 Wheat. [16 U. S.] 610, and U. S. v. Klintock, 5 Wheat. [18 U. S.] 144, the circuit court has jurisdiction of a case of murder and robbery, under the eighth section of this act of 1790, unless the defendant be a foreigner, and the offence be committed on board of a vessel which, at the time, "in point of fact, as well as right, is the property of subjects of a foreign state, who have at the time, in virtue of this property, the control of the vessel." The allegation of ownership, in this indictment, excludes the case from that class of vessels over which the jurisdiction of the court does not extend.

Motion overruled.